IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN MILLER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ERIC TICE, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 3:24-cv-100<br>Judge Stephanie L. Haines<br>Magistrate Judge Kezia O.L. Taylor |

## MEMORANDUM ORDER

Presently before the Court are two Motions to Dismiss (ECF Nos. 21, 25). The first Motion to Dismiss was filed by Cumberland County Forensic Lab ("Lab"), and the second was filed by "Corrections Defendants"[1] who were employed at State Correctional Institution at Somerset ("SCI-Somerset") when the events at issue took place. The Corrections Defendants are Eric Tice, SCI-Somerset Superintendent ("Tice"), Kevin Turner, SCI-Somerset Security LT ("Turner"), Doug Hockenbury, BII Employee ("Hockenbury"), and T. Knepper, SCI-Somerset Hearing Examiner ("Knepper"). All Defendants are being sued by pro se Plaintiff Steven Miller ("Plaintiff") in their individual and official capacities for violations of the First and Fourteenth Amendments of the United States Constitution.[2] Plaintiff seeks declaratory and injunctive relief and monetary damages.

Defendants seek to dismiss Plaintiff's Complaint (ECF No. 5) stating it fails to state a claim upon which relief can be granted. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d

---

[1] When referring to the Lab *and* Corrections Defendants the Court will simply state Defendants.
[2] Plaintiff stated that he intended on suing employees at the Lab as individuals, *See* ECF No. 33, p. 4; ECF No. 43, p. 5, but stated that discovery is first necessary to do so.

1

Cir. 1993). In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[3] The Lab and the Corrections Defendants each filed Briefs in Support of their Motions to Dismiss (ECF Nos. 23, 26, respectively). Plaintiff filed Responses (ECF Nos. 30, 33). The Lab filed a Reply (ECF No. 34). This matter was referred to Magistrate Judge Kezia Taylor for proceedings in accordance with the Federal Magistrates Act, 28 U.S.C. § 636, and Local Civil Rule 72.D.

On May 25, 2025, Magistrate Judge Taylor filed a Report and Recommendation (ECF No. 39) recommending that both Motions to Dismiss (ECF Nos. 21, 25) be granted. Judge Taylor allows Plaintiff latitude to amend certain claims which were dismissed without prejudice. Plaintiff was advised that he may object to the Report and Recommendation on or before May 29, 2025. *See* 28 U.S.C.§ 636 (b)(1)(B) and (C) and Local Civil Rule 72.D.2. Plaintiff untimely filed for an extension to file Objections (ECF No. 40), which was granted (ECF No. 41). He then filed Objections (ECF No. 42), which mainly applied to Judge Taylor's findings as they pertained to the Corrections Defendants. He also filed a "Brief in Opposition to the Report and Recommendation" (ECF No.43), which the Court construes as Objections to Judge Taylor's findings as they pertain to the Lab.[4]

Upon *de novo* review of the complete record, and review of the Report and Recommendation (ECF No. 39), under Local Civil Rule 72.D.2, the Court will adopt in part the

---

[3] Plaintiff, at times, confuses the legal standard for a motion to dismiss (plausible claim) with a motion for summary judgment (no genuine issue of material fact). At this stage of litigation, the Court only determines whether Plaintiff has put forth facts under the law that support a plausible claim.
[4] Both pleadings filed as Objections (ECF Nos. 42, 43) are neither dated nor signed by Plaintiff.

findings and recommendations of Magistrate Judge Taylor in this matter.

The facts are repeated numerous times in the pleadings so the Court dispenses with a detailed accounting.[5] A summary of pertinent facts that Plaintiff presented is that on November 16, 2022, Plaintiff was housed at SCI-Somerset when mail from his attorney was confiscated by Tice and opened outside of his presence contrary to prison policy. Plaintiff's incoming mail had apparently alerted a drug sniffing dog and had "strange labeling". Based on these facts the mail was sent to, and handled by, Hockenbury at BII, following which it was sent to the Lab for testing. After a period of time, the Lab results were returned positive for two controlled substances, which Plaintiff alleges is a falsity. In the meantime, on November 22, 2022, Plaintiff grieved the opening of his mail outside of his presence and that grievance was ultimately denied.

On January 13, 2023, after the Lab results were returned, Plaintiff was issued a misconduct by Turner. The misconduct contained charges of possession or use of a dangerous or controlled substance, possession of contraband, and unauthorized use of mail kiosk, or telephone. These charges were related to the confiscated mail which tested positive for drugs. The delayed charges were due to waiting for the Lab's results.

Plaintiff appealed the misconduct and was found guilty by Knepper and, among other punishments, was given a sanction of 90 days in the Restricted Housing Unit ("RHU"). At the hearing, Plaintiff was never shown or allowed to examine the evidence (suspect mail), nor was his attorney. It was only shown to him over a virtual call. On January 26, 2023, Plaintiff's attorney complained to the Chief Counsel for the Department of Corrections, Tice, and Governor Shapiro threatening civil action for allegations made against her in relation to the suspect mail. On February 1, 2023, Plaintiff's grievance regarding the of opening the mail outside of his presence

---

[5] The facts are derived from ECF No. 5 (Complaint), Section V, and ECF No. 43 (Brief), p. 2, Section II ("Statement of the Facts").

3

was denied. On February 2, 2023, Plaintiff was "exonerated"[6] of the misconduct charges and was immediately released from the RHU, but he was still restricted for contact visits due to the misconduct. These privileges were later restored.

### *Analysis*

As an initial matter, the issue of immunity for Defendants was argued by all Parties. This Court finds that Eleventh Amendment immunity applies to the Corrections Defendants in their official capacities as the Magistrate Judge correctly determined.[7] ECF No. 39, p. 11. The Eleventh Amendment proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting in their official capacities. *See Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity). "Pennsylvania has not waived its immunity from suit in federal court." *Toth v. California Univ. of Pennsylvania*, 844 F. Supp. 2d 611, 648 (W.D. Pa. 2012) (citing 42 Pa.C.S.A. § 8521(b)). Nor did Congress intend by the general language of Section 1983 to override the traditional sovereign immunity afforded to the states. *See Quern v. Jordan*, 440 U.S. 332, 342-45 (1979); *see also Toth*, 844 F. Supp. 2d at 648. The DOC, as an agency of the Commonwealth of Pennsylvania, and its agents and employees, are therefore entitled to Eleventh Amendment immunity for money damages. *See Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019).

Plaintiff concedes this point, but states that immunity does not bar suits against state officials for declaratory or injunctive relief. ECF No. 33, p. 6. That may be the case but those remedies are not appropriate in this case as the Lab states in its Response. ECF No. 23, p. 11

---

[6] Plaintiff did not provide any documentation of his "exoneration" and states that he was given no reason for his release. ECF No. 43, p. 2.
[7] Judge Taylor declined to opine on the immunity status for the Lab. ECF No. 39, p. 12 fn 1.

(citing *Gruntal & Co., Inc. v. Steinberg,* 837 F. Supp. 85, 89 (D. NJ 1993); *Corliss v. O'Brien,* 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that one party is liable to another." (citations omitted)). "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" *Doe v. Nat'l Bd. of Med. Examiners,* 210 Fed.Appx. 157, 159-60 (3d Cir. 2006) (citations omitted); *see also O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974). "In order to state a basis for a claim for injunctive relief, the complaint must allege that injury to plaintiff[ ] is 'certainly impending.' " *Phillips v. St. Mary's Medical Ctr.*, 2013 WL 1124372, *2 (E.D. Pa. March 19, 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 n. 2, (1992)).

Plaintiff's allegations are of past conduct which is not alleged to be ongoing. Therefore, all claims against the Correction Defendants in their official capacity are dismissed with prejudice and claims of declaratory and injunctive relief are likewise dismissed.[8] The Court is left to address Plaintiff's claim for monetary damages against Corrections Defendants and the Lab in their individual capacities for conspiracy, retaliation, deprivation of access to court, and violation of due process.

### a. Conspiracy

Plaintiff does not allege conspiracy per se but he often makes assertions that Defendants "knew" what they were doing alluding to the fact that they colluded to falsify the lab results to retaliate against him for filing a grievance about the confiscation of the mail. This necessarily would involve all Defendants cooperation in such a scheme. To state a claim for civil conspiracy,

---

[8] Plaintiff includes a discussion in his Response (ECF No. 30, p. 3) arguing that Corrections Defendants are not protected by *qualified* immunity. The Court need not address this argument as it has found Eleventh Amendment immunity bars claims against Corrections Defendants in their official capacity.

Plaintiff must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393, 410–11 (M.D. Pa. 2020). Plaintiff has not substantiated such a claim.

No facts support that the Lab results were purposefully and falsely found positive for controlled substances so that Plaintiff would be issued a misconduct and sent to the RHU. There are no facts to show that Defendants worked together to achieve an unlawful result. This is all speculation by Plaintiff. Plaintiff uses his loosely determined "exoneration" (released from RHU early) as a jumping off point to assume that the drug findings were false even though this was never substantiated and the reason for his release was never provided. In fact, other punishments from the misconduct remained and the misconduct itself was not formally dismissed. There are no facts to bolster Plaintiff's conclusions, and mere speculation on the part of Plaintiff is not enough to support a plausible claim to withstand dismissal. A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as stated in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555.

Given Plaintiff has not supported a finding of false testing or a conspiracy claim it will dismiss all other claims drawn from the conspiracy as they pertain to the Lab as the testing is the only factual involvement the Lab has in the case. There is no meritorious fact pleaded to substantiate the claim that the Lab results were false, and even more tenuous, that the Lab purposely falsified the results to deprive Plaintiff of his civil rights. Plaintiff argues that he should

be able to obtain a copy of the Lab results and the identification of the individuals who performed the testing so that he can prove his theory. ECF No. 43, pp. 4-6. He bases his claim of false testing results on an unsubstantiated assertion that he was exonerated because the drug testing was false. This unsubstantiated speculation is not enough for a plausible claim and as the Lab states leads to a fishing expedition. ECF No. 34, p. 3. The Lab will be dismissed as a defendant with prejudice.

### b. First Amendment Retaliation

Plaintiff alleges that because he filed a grievance about the improper confiscation of his mail, Corrections Defendants retaliated against him by falsifying the drug testing on the mail, which in turn enabled a misconduct and consequential punishment. "In order to establish a First Amendment retaliation claim, a plaintiff must prove (1) that [s/]he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Muhammad ex rel. J.S. v. Abington Twp. Police Dep't*, 37 F. Supp. 3d 746, 760 (E.D. Pa. 2014) (citing *George v. Rehiel,* 738 F.3d 562, 585 (3d Cir.2013) (internal quotation marks and citation omitted)).[9]

Plaintiff has a constitutionally protected right in filing a grievance. The adverse action is the alleged fake drug positive tests, and the resulting misconduct and punishments. As Judge Taylor states the questionable prong is the causal connection between the grievance and the adverse action. ECF No. 39, p. 6. Judge Taylor finds there is temporal proximity between the grievance on November 22, 2022, and the misconduct on January 3, 2023. ECF No. 39, p. 7. That may be so, but it is arguable that there is a causal connection between the grievance and the

---

[9] Plaintiff, at times, argues retaliation against him by the act of Tice confiscating the mail. ECF No. 30, p. 11. Yet this assertion is factually impossible as the grievance was filed for the confiscation of the mail. Corrections Defendants cannot retaliate for something that has not yet happened.

7

misconduct because the Lab results were an intervening factor and the basis for which the misconduct is issued.

Though Judge Taylor finds a *prima facie* retaliation claim, she nevertheless dismisses the claim with prejudice stating that Corrections Defendants "would have taken the same course regardless of protected conduct and filed the misconduct for the charges based on [an] indication of narcotics in the report from the crime lab." ECF No. 39, p. 7 (citing Corrections Defendants' Brief, ECF No. 26, p. 6); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) ("The burden then shifted to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity.").

The Plaintiff argues that the narcotics finding is falsified so it is pretext for filing the misconduct that was really done in retaliation for the grievance. ECF No. 42, p. 4. Therefore, the Correction Defendants', and more specifically, Turner's defense that he would have filed the misconduct in any event given the drug charges is nullified by the assertion that those charges are false. Still, Plaintiff failed to substantiate his assertion of falsified test results with anything but speculation, which the Court is not bound to accept. The facts as supported on the record show that the misconduct was based on lab results of a finding of narcotics on Plaintiff's mail. As such there was a "legitimate penological goal" for the misconduct. *Rauser*, 241 F.3d at 334 ("[T]he Supreme Court held that a prison regulation that impinges on the constitutional rights of an inmate is valid if it is 'reasonably related to legitimate penological interests.'") (citing In *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Court adopts the conclusions of Judge Taylor and will dismiss the retaliation claim with prejudice.

    c. **Access To Court**

In her Report and Recommendation, ECF No. 39, pp. 7-8, Judge Taylor provides that under the First and Fourteenth Amendments, prisoners retain a right of access to the Courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). To establish an access-to-courts claim, a prisoner must allege: (1) an "actual injury" (*i.e.*, a lost opportunity to pursue a nonfrivolous or arguable underlying claim); and (2) that there is no other remedy, save the present civil rights suit, that could compensate for the lost claim. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "To demonstrate an actual injury, a plaintiff must show that the defendant's conduct hindered his attempt to litigate a non-frivolous claim." *Watson v. Wingard*, 782 F. App'x 214, 217 (3d Cir. 2019) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Judge Taylor found, and this Court agrees, that Plaintiff failed to state any actual injury that he was prevented from pursuing a non-frivolous claim because the mail from his attorney was confiscated. The First Amendment access to court claim will be dismissed without prejudice as to Tice and Hockenbury who confiscated the mail.[10] Plaintiff will be given the opportunity to provide factual support that the "time sensitive material" from his lawyer, contained in the confiscated mail, concerned a non-frivolous court matter and that he was denied the ability to pursue that court matter.

**d. Fourteenth Amendment Due Process**

On three bases Plaintiff asserts a violation of his Fourteenth Amendment due process rights. The first is the confiscation of his mail, the second is that he was denied access to the evidence of the tainted mail at his misconduct hearing, and the third is that he was sent to the RHU for a misconduct that was based on retaliation. There can be no viable Fourteenth Amendment claim of deprivation of property without due process when Plaintiff had meaningful post-

---

[10] Plaintiff argues actual injury in his Response (ECF No. 30). His arguments miss the point as it pertains to Access to Courts as he argues about the time in the RHU, his revoked privileges, and required drug programming. These are Plaintiff's injuries claimed as to other constitutional deprivations but not cognizable under the elements for an Access to Courts claim.

deprivation remedies for the loss available to him. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."). As to all three claims, Plaintiff had the right to file a grievance through the prison administrative process or to file a conversion and replevin action in state court. *See also* ECF No. 39, p. 9 (citing *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) ("[D]epreviation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy."). Judge Taylor rightly found dismissal with prejudice on this point.

As to the first allegation that the confiscation of his mail was a violation of his due process rights, Plaintiff does not have a constitutional claim. Plaintiff had and utilized his due process rights when filing a grievance about the issue. That claim was fully adjudicated. Accordingly, Defendants' motion to dismiss should be granted as to any Fourteenth Amendment procedural due process claim asserted on the confiscation of his mail.

As to Plaintiff's assertion that he was denied due process when he was not permitted by Knepper to examine the evidence against him at his hearing, ECF No. 42, p. 6; ECF No. 30, p. 11, Plaintiff did not assert facts that he grieved this issue through the prison grievance system, therefore, this claim has not been administratively exhausted.[11] Due process rights are not violated when a grievance process exists in the prison system and have not been utilized. *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) ("[W]e have previously rejected claims that the

---

[11] "Construing § 1997e(a) to require proper exhaustion also serves the PLRA's goals. It gives prisoners an effective incentive to make full use of the prison grievance process, thus providing prisons with a fair opportunity to correct their own errors. It reduces the quantity of prisoner suits. And it improves the quality of those suits that are filed because proper exhaustion often results in creation of an administrative record helpful to the court." *Woodford v. Ngo*, 548 U.S. 81, 81–82 (2006).

10

grievance system at issue provided an inadequate post-deprivation remedy. *See, e.g., Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 412 (3d Cir. 2000) ("In *Reynolds*, we held that the existence of a similar grievance program provided a sufficient remedy. In sum, the plaintiff had an adequate post-deprivation remedy, thereby satisfying due process.") (citing *Reynolds v. Wagner*, 128 F.3d 166, 181 (3d Cir. 1997))).

This Court is aware such a process was available to Plaintiff because the facts show that he grieved and fully exhausted his claim about the confiscation of his mail. The timeline for exhaustion of a claim is dictated by the institution. If the time limits for filing a grievance for a claim have expired, the claim is defaulted for consideration by the Federal Court. "[W]e hold that § 1997e(a) includes a procedural default component. We further hold that the determination whether a prisoner has properly exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).

Plaintiff's third assertion that he was sent to the RHU violating his liberty interests, this Court again finds that Judge Taylor correctly determined that Plaintiff's claim lacks merit. Judge Taylor's finding relies on *Sandin v. Conner*, 515 U.S. 472 (1995), which in summary states that for prisoners the liberty interest is "generally limited to freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Plaintiff did not allege any significant hardship. This Court adds that Plaintiff was only confined to the RHU for 10 days. Furthermore, the basis of Plaintiff's constitutional claim is that he was *wrongly* confined to the RHU because he was later "exonerated". As stated previously, this Court found that there is no factual support of Plaintiff's exoneration; it is speculated but

unsupported that he was released because the charges of the misconduct were dismissed. This is not a fact of record and as it stands Plaintiff's time in the RHU, as well as any other punishment that was a consequence of the misconduct, was justified given the drug charges which were fully adjudicated. As stated above, Plaintiff, within the statute of limitations for filing a grievance, could have exercised his due process rights by doing so.

Having found that the Complaint fails to state a claim, the Court must now determine whether amendment to the Complaint would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) ("The U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile").

The Court finds that amendment would be futile as to the dismissal of Corrections Defendants in their individual capacity and as to the Lab. There can be no further pleading of facts that would change the outcome of the Court's legal analysis. The claims of conspiracy, retaliation, and violation of due process are also not subject to amendment as they were dismissed on a lack of factual support that cannot be bolstered. This case was thoroughly briefed, and no additional pleading could change this Court's ruling in these matters with one exception.[12] The Access to Court claim may be amended to provide any factual support that Plaintiff was denied the ability to pursue a meritorious case because of "time sensitive" legal material that was confiscated.

Accordingly, the following order is entered:

---

[12] This Court departs from Magistrate Judge Taylor's recommendation that the 14th Amendment claim as it pertains to the RHU confinement and the claims as to the Lab be dismissed without prejudice.

**ORDER**

AND NOW, this 3rd day of December, 2025, IT IS ORDERED that the Lab's Motion to Dismiss (ECF No. 21) is hereby GRANTED; and

IT IS FURTHER ORDERED that the Corrections Defendants' Motion to Dismiss (ECF No. 25) hereby is GRANTED in part; and,

IT IS FURTHER ORDERED that Plaintiff's claim as to Access to Courts under the First Amendment against Defendants Tice and Hockenbury is dismissed without prejudice; and

IT IS FURTHER ORDERED that Magistrate Judge Taylor's Report and Recommendation (ECF No. 39) is adopted in part and as supplemented, as the Opinion of the Court.

IT IS FURTHER ORDERED that should Plaintiff choose to amend the Complaint as to the Access to Court claim as specified by the Court, the Amended Complaint must be received on or before January 5, 2026. Failure to do so may result in the Access to Court claim being dismissed with prejudice.

/s/ Stephanie L. Haines
Stephanie L. Haines
United States District Judge